UNITED STATES of America, Plaintiff–Appellee,

v.

Juan Pablo CEDANO–ARELLANO, Defendant–Appellant.

No. 02–50450.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 2003.

Filed May 27, 2003.

---

Todd W. Burns, Federal Public Defender's Office, San Diego, CA, for the defendant-appellant.

Carol C. Lam, United States Attorney, Patrick K. O'Toole and David W. Mitchell, Assistant United States Attorneys, San Diego, CA, for the plaintiff-appellee.

Before B. FLETCHER, SILVERMAN, Circuit Judges, and MARTONE, District Judge.*

---

* The Honorable Frederick J. Martone, United States District Judge for the District of Arizona, sitting by designation.

## OPINION

PER CURIAM.

Defendant–Appellant Juan Pablo Cedano–Arellano was indicted on charges of smuggling cocaine into the United States after a search at the Mexican border revealed packages of cocaine in the gas tank of his truck. Cedano–Arellano entered a conditional guilty plea, preserving his right to appeal the following issues: whether the district court erroneously denied him discovery on the narcotics detector dog that "alerted" on his gas tank, whether there was probable cause to support his initial and subsequent arrests, whether there was reasonable suspicion to support the Customs agents' search of his gas tank, whether the federal drug statutes are constitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and whether the grand jury that indicted him was instructed properly. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

### I. *Discovery Issues*

In a pretrial motion, defense counsel asked the district court to require discovery from the government about the narcotics dog that had alerted on Cedano–Arellano's gas tank. Counsel explained that he had retained an expert to review the dog's performance and training records, and sought discovery under Fed.R.Crim.P. 16 and the Jencks Act of a broad range of materials pertaining to the dog, including his handler's log, all training records and score sheets, certification records, and training standards and manuals. The district court declined to compel general discovery on the dog, ruling that the government's obligations were as follows: (1) to establish the dog's reliability, if it intended to rely on the dog to establish reasonable suspicion for the subsequent search of the gas tank; (2) if the government did intend to put on evidence about the dog, to disclose all *Brady* material suggesting that the dog was not reliable; and (3) under Rule 26.2, to disclose to the defense any prior statements that the officer testifying about the dog's reliability had made. Otherwise, the district court concluded, if the requested material was not *Brady* material, the government had no obligation to disclose it.

The dog's handler testified at a pretrial evidentiary hearing on March 18, 2002. The judge reviewed *in camera* the training logs maintained by the dog's handler, and concluded that none of the information was *Brady* material or contradictory to the witness's testimony. He held that the training logs were precluded from discovery by Fed.R.Crim.P. 16(a)(2) and did not constitute a "statement" by the witness under the rule set forth in *United States v. Carrasco*, 537 F.2d 372 (9th Cir.1976). Accordingly, the judge denied defense counsel's Jencks Act motion to disclose the training logs. The only evidence about the dog introduced at the hearing was the canine officer's testimony, without any supporting documentation. At the close of testimony, the judge made several findings of fact and conclusions of law, including, inter alia, that the dog was a "reliable trained narcotics detector dog."

On appeal, Cedano–Arellano challenges two discovery rulings by the district court: (1) its refusal to compel production of general discovery regarding the narcotics detector dog under Fed.R.Crim.P. 16, and (2) its refusal to compel production of the canine officer's "statements" (i.e., the dog's training log) under the Jencks Act and Fed.R.Crim.P. 26.2. We review the district court's denial of discovery for an abuse of discretion, *United States v. Guagliardo*, 278 F.3d 868, 871 (9th Cir.2002) (per curiam), but we review de novo the district court's interpretation of a discov-

ery rule, *United States v. Finley,* 301 F.3d 1000, 1007 (9th Cir.2002).

### A. *Discovery of the dog's qualifications*

■ Rule 16 requires, inter alia, that the government disclose to the defendant any documents or objects that are material to preparing the defense, or that the government intends to use in its case-in-chief at trial. Fed.R.Crim.P. 16(a)(1)(E). The government is also required to disclose the results of any scientific test or experiment if the results are within its possession, custody, or control, and if the attorney for the government knows or could know through due diligence that they exist, and the results are either material to preparing the defense or the government intends to use them in its case-in-chief at trial. Fed.R.Crim.P. 16(a)(1)(F). However, Rule 16 specifically excludes the following from disclosure: "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." Fed.R.Crim.P. 16(a)(2). Cedano–Arellano argues that the materials at issue were crucial to his ability to assess the dog's reliability, a very important issue in his defense, and to conduct an effective cross-examination of the dog's handler. We agree. For example, the handler testified that the dog had been certified several times and had achieved a much-better-than-passing score on the certification tests. We can see no reason why the certification documents, the production of which had been requested and about which the handler testified, should not have been disclosed. Moreover, the dog's training materials and records plainly do not fall within the scope of Rule 16(a)(2):

they were not made in connection with investigating or prosecuting this or any other case, and most of them (with the possible exception of the training log) are not statements by prospective government witnesses. *Cf. United States v. Armstrong,* 517 U.S. 456, 462–63, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (characterizing Rule 16(a)(2) as precluding discovery of "government work product in connection with [the defendant's] case").

Accordingly, we find that the district court judge erred in denying defense counsel's motion for discovery of the dog's training and certification records under Fed.R.Crim.P. 16.

### B. *Jencks Act disclosure*

■ Although the records are discoverable under Rule 16, we conclude that they are not Jencks Act material. This Court has explained:

> Under the Jencks Act, the government must turn over pretrial statements made by prosecution witnesses related to the subject matter of their trial testimony. 18 U.S.C. § 3500. This court has held that reports of government agents made in the course of criminal investigation are subject to production under the Jencks Act if the government agent testifies. *See, e.g., United States v. Harris,* 543 F.2d 1247, 1250 (9th Cir.1976). However, the court has held that an agent's rough notes jotted during surveillance are not producible under the Jencks Act due to the incomplete nature of the notes. *United States v. Bernard,* 623 F.2d 551, 557–58 (9th Cir.1979).

*United States v. Alvarez,* 86 F.3d 901, 906 (9th Cir.1996).

■ Cedano–Arellano argues that, under *Carrasco, supra,* the dog's training logs were subject to disclosure under the Jencks Act and Fed.R.Crim.P. 26.2. The

district court disagreed, ruling that the notes taken in the training logs did not constitute "statements" under the Jencks Act. We agree with the district court. In deciding whether something constitutes a "statement" under the Jencks Act, this Court has focused on the distinction between investigative interviews and surveillance observations, rather than on whether the material was communicated to another person. *United States v. Bobadilla–Lopez*, 954 F.2d 519, 522–23 (9th Cir.1992). The training logs are more like surveillance observations than witness statements. The logs were not "intended to form the basis for evidence at trial." *Id.* Therefore, the district court did not err in ruling that the logs were not statements for purposes of the Jencks Act.

Thus, the district court did not err in refusing to compel discovery of the training log under the Jencks Act, in the absence of any *Brady* material contained therein.

## II. *Other Issues*

### A. *Reasonable suspicion for gas tank search*

 The border agents plainly had reasonable suspicion to support their search of Cedano–Arellano's gas tank. As this Court has explained, gas tank searches at the border are not "routine," and are therefore subject to the reasonable-suspicion standard, rather than the any-suspicion standard for routine searches. *United States v. Molina–Tarazon*, 279 F.3d 709, 713, 717 (9th Cir.2002); *see also id.* at 712 (requiring that, when a border search "goes beyond the routine, an inspector must have a reasonable suspicion that the person to be searched may be carrying contraband.") (citing *United States v. Ramos–Saenz*, 36 F.3d 59, 61 (9th Cir.1994)).

The agents made the decision to search Cedano–Arellano's gas tank based on the following factors: Cedano–Arellano's nervousness and evasiveness in response to routine questioning, the fact that he stated that someone else had borrowed his truck the day before, and the certified narcotics detector dog's alert on the gas tank. The agent then tapped on Cedano–Arellano's gas tank, and heard a solid sound consistent with the presence of something other than liquid in the tank.[1] Only then did the Customs agents remove and search the gas tank. Accordingly, we affirm the district court's finding that the agents had reasonable suspicion sufficient to support the gas tank search.

---

1. Cedano–Arellano argues that the agent was incompetent to testify about the significance of sounds produced by tapping on the gas tank. The government did not establish that the agent was an expert under Fed.R.Evid. 702. This argument is without legal support. *See, e.g., United States v. Hernandez*, 313 F.3d 1206, 1210–11 (9th Cir.2002) ("[W]hile the determination of reasonable suspicion is exceedingly fact-specific, the circumstances taken together must be evaluated as they would be understood by those versed in the field of law enforcement.... Such an approach allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.") (internal citations and quotation marks omitted); *United States v. Bravo*, 295 F.3d 1002, 1008 (9th Cir.2002) (Customs inspector had reasonable suspicion to search toolbox for drugs based on, inter alia, tapping on toolbox, which made a solid rather than a hollow sound); *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir.1999) ("In drug investigations, the court may consider the experience and expertise of the officers involved.... This experience and expertise may lead a trained narcotics officer to perceive meaning from conduct which would otherwise seem innocent to the untrained observer.") (internal citations omitted).

### B. Probable cause for arrest

■ As the government concedes, Cedano–Arellano was under arrest by the time he was shackled to the bench in the waiting room while the agents tapped on his gas tank and then searched his car. *See Hernandez*, 314 F.3d at 433–34 ("The standard for determining whether a person is under arrest is not simply whether a person believes that he is free to leave, ... but rather whether a reasonable person would believe that he or she is being subjected to more than 'temporary detention occasioned by border-crossing formalities.' ") (quoting *United States v. Butler*, 249 F.3d 1094, 1100 (9th Cir.2001)) (internal citations omitted). Cedano–Arellano maintains that, at this point in time, the agents did not have probable cause to arrest him.

We disagree. To begin with, the "alert" by the certified, reliable narcotics detector dog was sufficient, even by itself, to support a finding of probable cause. *See United States v. Lingenfelter*, 997 F.2d 632, 639 (9th Cir.1993) (holding that "[a] canine sniff alone can supply the probable cause necessary for issuing a search warrant if the application for the warrant establishes the dog's reliability"). Moreover, in this case, there was more: Cedano–Arellano's nervousness and evasiveness, and the fact that Cedano–Arellano himself told the agent that someone else had borrowed his truck the day before. Accordingly, we agree with the district court that there was probable cause for Cedano–Arellano's initial arrest.[2]

### C. Constitutionality of 21 U.S.C. § 960

In *United States v. Buckland*, 289 F.3d 558 (9th Cir.2002) (en banc), we rejected the argument that 21 U.S.C. § 841(b) is facially unconstitutional under *Apprendi.*

We reached the same conclusion as to 21 U.S.C. § 960 in *United States v. Mendoza–Paz*, 286 F.3d 1104 (9th Cir.2002). Cedano–Arellano, however, argues that the Supreme Court's subsequent opinion in *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), overrules these opinions.

This argument was already rejected in a published opinion of this Court in *United States v. Hernandez*, 314 F.3d 430, 437–38 (9th Cir.2002). Accordingly, under basic principles of stare decisis, we reject it as well.

### D. Propriety of grand jury instruction

Cedano–Arellano argues that the grand jury instruction in this case violated the Supreme Court's holding in *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), because the judge instructed the grand jurors that they had a duty to indict him if they found probable cause to believe he was guilty. This Court has rejected Cedano–Arellano's argument in *United States v. Marcucci*, 299 F.3d 1156, 1161 (9th Cir.2002) (per curiam).

### III. Harmless Error

■ We publish this opinion to make clear that discovery of the qualifications of a dog used for drug detection is mandatory. However, we nonetheless conclude that the error in this case was harmless within the meaning of Fed.R.Crim.P. 52(a) because it did not affect any substantial right of Cedano–Arellano's. As noted above, the judge reviewed the training logs *in camera* and concluded both that (a) the dog was reliable and (b) there was no *Brady* material contained therein. Accordingly, the dog's "alert" may be considered in both the reasonable-suspicion and the probable-cause analyses. Viewed in

---

**2.** We therefore do not reach the issue of "in- tervening" probable cause.

conjunction with the other evidence, we conclude that, while defense counsel should have been given access to the requested documents, there was nothing in those documents that would have changed the ultimate determination that the agents had reasonable suspicion to support their search of the gas tank and probable cause to arrest Cedano–Arellano.

## IV. *Conclusion.*

The documents pertaining to the dog's qualifications sought in this case were material to preparing the defense. They should have been disclosed to the defendant. Under the circumstances of this case, we find that the failure to do so was harmless error, but we by no means suggest that this will be true in all cases.

AFFIRMED.