**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JOSE AUGUSTINE MUNIZ-JAQUEZ,
*Defendant-Appellant*.

No. 12-50056

D.C. No.
3:10-cr-02637-
JAH-1

OPINION

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted
February 12, 2013—Pasadena, California

Filed June 10, 2013

Before: Alfred T. Goodwin, Andrew J. Kleinfeld,
and Barry G. Silverman, Circuit Judges.

Opinion by Judge Goodwin

## SUMMARY[*]

### Criminal Law

Vacating an illegal reentry conviction and remanding, the panel held that the district court abused its discretion under Fed. R. Crim. P. 16 by failing to order production of Border Patrol dispatch tapes.

The panel observed that defense's counsel's seeking the tapes to potentially further an official restraint defense, as well as for possible use in impeaching the agent who testified that he called for backup over his service radio immediately after spotting the defendant, was not a fishing expedition. The panel also observed that the district court had no basis to conclude, without listening to the tapes, that the defendant's showing of materiality was speculative.

### COUNSEL

Devin Burstein, Federal Public Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Blair C. Perez (argued), Assistant United States Attorney, Laura E. Duffy, United States Attorney, Bruce Castetter, Chief, Appellate Section Criminal Division, United States Attorney's Office, San Diego, California, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

GOODWIN, Senior Circuit Judge:

Jose Augustine Muniz-Jaquez appeals his conviction for being a deported alien found in the United States. He assigns error to the district court's failure to order production of certain U.S. Border Patrol dispatch tapes. Because the district court erred in excluding potentially exculpatory evidence, we vacate the conviction and remand.

## I.  BACKGROUND

On April 28, 2010, U.S. Border Patrol Agent Derrick Woodford observed Muniz-Jaquez and four others running north near Copper Canyon, three miles east of Otay Mesa, California, clearly within the United States. Prior to trial, defense counsel filed a timely discovery motion requesting all arrest reports, notes, and dispatch tapes. The government produced some materials, but no dispatch tapes.

During trial, Agent Woodford testified that Copper Canyon begins nearly at the U.S./Mexico border and extends roughly a mile north of the border. He testified that he drove along a road running adjacent to the border fence that then curved north, crossed two bridges, and curved back south to the fence. He testified that, as he came around the initial curve, he observed five individuals north of the second bridge, roughly fifty yards from him, walking north. On cross-examination, Agent Woodford testified that he did not see Muniz-Jaquez walking north from the fence, but rather spotted him north of the second bridge. However, after reviewing his written report of the incident, he also testified that he had written that he observed five people "running

north from the immediate border area." He further stated that immediately after spotting the individuals, he called for backup over his service radio, which would have been tape-recorded.

During recess, the prosecutor, who had not previously known of the tapes, learned that they existed, but asserted they were not discoverable. Defense counsel conceded, but preserved for appeal, that the tapes were not covered by the Jencks Act. Defense counsel then argued that any tapes were discoverable under Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963). Defense counsel argued that the tapes were relevant to presenting an official-restraint defense: Muniz-Jaquez might have been observed from the moment of entry until arrest. Federal law proscribes a deported alien's entry, attempted entry, or being found in the United States. 8 U.S.C. § 1326(a). Muniz-Jaquez was indicted only for being found in the United States after his previous deportation and removal. Despite the seemingly plain language, however, "physical presence is not enough" to violate the statute. *United States v. Pacheco-Medina*, 212 F.3d 1162, 1163 (9th Cir. 2000).

In order to constitute "entry," an alien must be free from official restraint. *Id.* at 1164. Official restraint includes surveillance, regardless of the alien's awareness. *Id.* "The doctrine is premised on the theory that the alien is in the government's constructive custody at the time of physical entry. By contrast, when an alien is able to exercise his free will subsequent to physical entry, he is not under official restraint." *Id.* at 1165 (quoting *United States v. Aguilar*, 883 F.2d 662, 683 (9th Cir. 1989)). This doctrine extends to the offense of being found in the United States, because the concept of entry is "embedded in the 'found in' offense." *Id.*

at 1166.  "[I]t logically follows that an entry, as defined legally, is required before a person is 'found in' the United States."  *Id.*

Counsel also argued that the recording could impeach Agent Woodford.  Without listening to the tapes, the district court repeatedly questioned their exculpatory or material quality, characterizing arguments in favor of production as speculative.  The court noted the lack of any other challenge to the agent's testimony, as well as the "spotty" nature of the tapes which it had not reviewed, and seemed to conclude that the defense had untimely requested the tapes in the middle of trial.

Prior to trial, the prosecutor presumed that the tapes no longer existed, and defense counsel also presumed, from past experience, that any tapes had been erased.  The district court stated that defense counsel would be aware that these tapes should be available in the future and could bring motions earlier next time.  Declaring the motion untimely and leading to inappropriate delay, the court said counsel had failed to establish that the tapes would be either material or exculpatory and denied the motion.

We also note that the government conceded at oral argument that it would have produced the tapes prior to trial had it been aware of their existence.

Following the conclusion of the bench trial, the district court found Muniz-Jaquez guilty of being a deported alien found in the United States.  The court sentenced him to seventy months' incarceration.

## II.  DISCUSSION

Muniz-Jaquez does not make a *Brady* argument before us, though upon remand any exculpatory evidence must of course be disclosed.  He concedes the Jencks Act does not apply, *United States v. Bobadilla-Lopez*, 954 F.2d 519, 522–23 (9th Cir. 1992), preserving the issue only for potential en banc review.  The only issue remaining on appeal is the district court's ruling under Rule 16.  We reverse.

Discovery rulings are reviewed for abuse of discretion, looking "to whether the district court reaches a result that is illogical [or] implausible." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010).  Rule 16 "grants criminal defendants a broad right to discovery," *id.*, requiring disclosure of all documents "material to preparing the defense," Fed. R. Crim. P. 16(a)(1)(E)(i).  Rule 16 is thus broader than *Brady*.  Information that is not exculpatory or impeaching may still be relevant to developing a possible defense. *See United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013) ("Even if the documents [requested under Rule 16] caused [defendant] to completely abandon [his] entrapment defense and take an entirely different path, the documents would still have been 'material to preparing the defense' under Rule 16(a)(1)(E)(i).").  Even inculpatory evidence may be relevant.  A defendant who knows that the government has evidence that renders his planned defense useless can alter his trial strategy.  Or he can seek a plea agreement instead of going to trial.  As the Supreme Court recently noted, "criminal justice today is for the most part a system of pleas, not a system of trials." *Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012).

"A defendant must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense." *Stever*, 603 F.3d at 752 (quotation marks omitted). "Rule 16 permits discovery that is 'relevant to the development of a possible defense.'" *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). "[G]eneral description[s] of the information sought [or] conclusory allegations of materiality" are insufficient. *Id.*

The district court concluded, without listening to the tapes, that Muniz-Jaquez's showing of materiality was speculative. This court has held a defendant was entitled to discovery of drug dog certification materials because they "were crucial to [the defendant's] ability to assess the dog's reliability, a very important issue in his defense, and to conduct an effective cross-examination of the dog's handler." *United States v. Cedano-Arellano*, 332 F.3d 568, 571 (9th Cir. 2003). The handler had testified to the dog's certification and "much-better-than-passing score" in the tests, and the court concluded there was "no reason why the certification documents, the production of which had been requested and *about which the handler testified*, should not have been disclosed." *Id.* (emphasis added).

Here, Agent Woodford testified as to his location, and Muniz-Jaquez's location at first sighting. Importantly, he also testified that he called for backup immediately upon sighting the defendant. Further, the agent's report listed Muniz-Jaquez's location as the immediate border area. Defense counsel here made clear that he sought the tapes to potentially further an official restraint defense, as well as for possible use in impeaching the agent. This was not a fishing expedition. As in *Cedano-Arellano*, the tapes could have

been crucial to Muniz-Jaquez's ability to assess the reliability of Agent Woodford's testimony and to cross-examine him effectively, both important issues in his defense. Moreover, given Agent Woodford's testimony that he immediately called for backup, the tapes were clearly relevant to the defendant's location and the official restraint defense.

In rejecting the materiality showing, the district court referred to the "spotty" nature of the tapes. Problematically, it did so without listening to them. The district court also improperly relied on Agent Woodford's supposed credibility and the lack of any challenge to his testimony. In doing so, the district court assumed the point in dispute. Without access to the tapes, Muniz-Jaquez had little material with which to challenge the agent's testimony. The district court had no basis for finding the defendant's showing of materiality to be speculative.

The district court also appeared motivated to deny the motion because it occurred in the midst of trial. To the extent the district court based denial of the motion on the lateness of the request, that consideration was not relevant here because the lateness resulted from the government's failure to disclose the tapes' existence at the appropriate time. Timeliness and materiality are two different concepts and each has its place in the exercise of discretion. Particularly where, as here, both attorneys were apparently surprised to find the tapes still existed. Defense counsel cannot be faulted for failing to renew the request where, among other things, the prosecutor failed to realize the tapes still existed, and the government failed to disclose them in the first instance. The defense was certainly not dilatory.

### III.  CONCLUSION

In sum, the district court abused its discretion in excluding the tapes.  We therefore remand for production of the recordings, any motions the production may generate, including any motion for a new trial, and such subsequent determinations as may be appropriate.  *Stever*, 603 F.3d at 754 (Rule 16 error may require "remand for a determination whether the Government's documents in fact contain, or would have led to, information that might have altered the verdict").

**REVERSED AND REMANDED with instructions**.