**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50388 |
| Plaintiff - Appellee, | D.C. No. 3:12-cr-04584-DMS-1 |
| v. | |
| FRANCISCO SALAZAR, Jr., | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted November 19, 2014
Pasadena, California

Before: SCHROEDER, PREGERSON, and NGUYEN, Circuit Judges.

Francisco Salazar, Jr. appeals the decision of the district court that denied his

motion to suppress evidence obtained by a warrantless download of electronic data

from his cellular phone incident to his arrest, and from a canine inspection of his

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

automobile on September 19, 2012. We have jurisdiction under 28 U.S.C. §§ 1291 & 1294(1). We find for the appellant and reverse the order of the district court.

The district court denied Salazar's motion to suppress without the benefit of *Riley v. California*, 134 S. Ct. 2473 (2014), in which the Supreme Court held that the search of a cellular phone incident to arrest, absent exigency, requires a probable cause warrant. The evidentiary record may be sparse and unclear as to how the warrantless cellular phone search affected Salazar's guilty plea, but the law as to this issue is substantial and clear. *See Riley*, 134 S. Ct. at 2493; *see also United States v. Camou*, No. 12-50598, 2014 WL 6980135 (9th Cir. Dec. 11, 2014). The district court's failure to suppress the evidence obtained from the unlawful search must be reversed.

The district court also lacked the benefit of *United States v. Thomas*, 726 F.3d 1086, 1096-97 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 2154 (2014), where this court concluded that redacted canine training records were inadequate to demonstrate a canine's reliability for a probable cause finding to justify a subsequent search.

The issue regarding the canine reliability determination in this case is not whether a mathematical review of numerical scores on submitted forms demonstrate that the dog in this case, Charley, is a good dog, or that Beny-A, the

dog in *Thomas*, may have been a bad dog, as the dissent's analysis indicates. The issue is whether the government fulfilled its duties to provide Salazar with a fair hearing before the district court. *See Florida v. Harris*, 133 S. Ct. 1050, 1055-1058 (2013).

The government has long been on notice that a defendant in a case such as this one is entitled to canine training records and that their disclosure is mandatory. *United States v. Cedano-Arellano*, 332 F.3d 568, 573 (9th Cir. 2003); *see also United States v. Cortez–Rocha,* 394 F.3d 1115, 1118 n. 1 (9th Cir. 2005). These types of records are "crucial to [a defendant's] ability to assess the dog's reliability, a very important issue in his defense, *and to conduct an effective cross-examination of the dog's handler*." *Cedano-Arellano*, 332 F.3d at 571 (emphasis added).

The government submitted the unredacted canine training records to this panel on appeal. Under *Cedano-Arellano* this is insufficient to cure the error. *Id.* at 573. It is at the district court, where the facts are determined, testimony is subject to searching cross-examination, and the evidentiary record is compiled, that unredacted canine records must, at a minimum, be presented to the judge in camera for review and considered in light of the specific facts at issue in the trial. *Id.*

3

We would deprive the district court of its proper function were we to allow the government to successfully circumvent the usual rules of criminal procedure, Fed. R. Crim. P. 16, and the requirements of Ninth Circuit precedent, *Thomas*, 726 F.3d at 1096-97, by introducing mandatory unredacted training records only when a case is on appeal. "[A] probable-cause hearing focusing on a dog's alert should proceed much like any other. *The court* should allow the parties to make their best case, consistent with the usual rules of criminal procedure. And *the court* should then evaluate the proffered evidence to decide what all the circumstances demonstrate. If . . . the defendant has challenged the State's case (by disputing the reliability of the dog overall or of a particular alert), then *the court* should weigh the competing evidence." *Harris*, 133 S. Ct. at 1058 (emphasis added).

"The question . . . is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id*. The lens of common sense used in answering this question should only on rare occasion be darkened by the government's redacting pen.

In this case, the defendant challenged the canine's reliability and points to specific instances where the unredacted canine training records, along with effective cross-examination, may have "changed the ultimate determination that

4

the agents had [probable cause] to support their search[.]" *Cedano-Arellano*, 332 F.3d at 574.

We therefore reverse and remand to the district court for further proceedings in light of intervening case law.

Per the Conditional Plea Agreement between Salazar and the government filed May 21, 2013, and Fed. R. Crim. P. 11(a)(2), Salazar is permitted to withdraw his plea of guilty to 21 U.S.C. §§ 841(a)(1) and 846. *See United States v. Mejia*, 69 F.3d 309 (9th Cir. 1995).

**REVERSED AND REMANDED.**

*United States v. Salazar*, No. 13-50388

NGUYEN, Circuit Judge, dissenting:

I respectfully dissent.  In my view, reversal is unwarranted because any error was harmless.

A.  Charley's Training Records

Even if the unredacted training records for Charley (the dog) had been available, they would not have changed the district court's finding that Charley was reliable.  In *United States v. Cedano-Arellano*, a dog sniff case with similar facts, we found that "while defense counsel should have been given access to the requested documents, there was nothing in those documents that would have changed the ultimate determination that the agents" had reasonable suspicion to search the vehicle.  332 F.3d 568, 574 (9th Cir. 2003).  The same conclusion applies with equal force here.

The government produced records that revealed Charley's scores, which were nearly all passing marks.  It redacted the comments on Charley's performance and how the training was conducted.  On appeal, we have the benefit of the unredacted records and can readily see that the redacted comments are overwhelmingly positive.  If anything, the redacted comments strengthen the

district court's finding that Charley was reliable.[1]

The facts here contrast sharply with those in *United States v. Thomas*, where we reversed a denial of a motion to suppress because of the district court's reliance on redacted training records. 726 F.3d 1086 (9th Cir. 2013). In *Thomas*, we did not have the unredacted records, and thus we "[could not] say that there is 'nothing in those documents that would have changed the ultimate determination that the agents had [probable cause] to support their search.'" *Id.* at 1097 (first alteration added, second alteration in original) (quoting *Cedano-Arellano*, 332 F.3d at 574).

Moreover, Beny-A, the dog in *Thomas*, is no Charley. Among other differences, Beny-A and his handler received failing scores on every single performance record in various categories, and received failing scores around 6 percent of the time. *See* Excerpts of Record of Appellant at 216-31, *United States v. Thomas*, 726 F.3d 1086 (9th Cir. 2013) (No. 11-10451), ECF No. 42. The

---

[1] The majority states that the relevant question is not Charley's reliability, but the government's responsibility to provide Salazar with a fair hearing. But to the extent that this is a discovery issue, it bears mention that defense counsel did not object below to the redactions. As we explained in *United States v. Henderson*, when the government withholds discovery information based on a claim of privilege, "a district court must hold an in camera hearing whenever the defendant makes a minimal threshold showing that disclosure would be relevant." 241 F.3d 638, 645 (9th Cir. 2000) (quoting *United States v. Spires*, 3 F.3d 1234, 1238 (9th Cir. 1993)) (internal quotation marks omitted). By failing to object or request an in camera review, Salazar failed to make such a showing. Moreover, Salazar's failure to object arguably limits us to plain error review, as the government argues. In any event, even under harmless error review, Salazar's claim fails.

government in *Thomas* also conceded that the redacted comments likely would include "critiques of the team's competence as well as discussions about areas for improvement." *Thomas*, 726 F.3d at 1097. Charley, on the other hand, received failing scores less than one-half of one percent of the time, and the redacted comments on his records are overwhelmingly positive. The redacted comments here—nearly all along the lines of "Great job! Team works very well together" and "Canine has a great nose and strong alert"—generally praise Charley's performance. The redactions do not undermine the probable cause analysis, and any error in redacting the records is therefore harmless. *See Florida v. Harris*, 133 S. Ct. 1050, 1057 (2013) (observing that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert").

B.  The Cell Phone Records

Any error in the district court's failure to suppress the cell phone records was harmless. Salazar pleaded guilty to being a member of a drug conspiracy, a charge that was amply supported by other evidence. To find guilt of conspiracy, the government need only prove "an agreement to accomplish an illegal purpose." *United States v. Jackson*, 167 F.3d 1280, 1285 (9th Cir. 1999). Here, evidence that Salazar agreed to smuggle drugs is ample: the narcotics were found in the car that

3

Salazar owned, directly under his seat, and he appeared to be feigning sleep throughout the entire stop (including at secondary inspection), a practice which the attending Border Patrol agent identified as often used to avoid inspection. Given the strength of this evidence, any error in admitting the cell phone records is therefore harmless. *See* Fed. R. Crim. P. 52(a).

Salazar suggests that we follow the Tenth Circuit's approach in *United States v. Benard*, 680 F.3d 1206 (10th Cir. 2012). Under *Benard*, harmless error is applied to the question of "whether there is a reasonable possibility that the error contributed to the plea," which is a difficult task because "a defendant's decision to plead guilty may be based on any factor inside or outside the record." *Id.* at 1213 (quoting *People v. Grant*, 380 N.E.2d 257, 264 (N.Y. 1978)) (internal quotation marks omitted).

We have not adopted this approach in the conditional plea context. *See, e.g., Cedano-Arellano*, 332 F.3d at 573-74 (applying harmless error analysis to an appellant's conditional guilty plea when the existence of other evidence would not have changed the outcome of a motion to suppress); *United States v. Davis*, 530 F.3d 1069, 1083-84 (9th Cir. 2008) (same). Even accepting Salazar's suggestion, however, there is little evidence to suggest that he might not have pleaded guilty had the cell phone records been suppressed. Suppression of the cell phone records

4

was mentioned nearly as an afterthought during the suppression hearing, and nothing suggests that their content (which remains unknown) would have played a significant role in the government's case.

Salazar raises a number of additional arguments, none of which is persuasive. Therefore, I would affirm.