RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0088p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee*,

  *v.*

REBECCA STAMPE,

    *Defendant-Appellant*.

No. 19-6293

───────────────

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:18-cr-00016-1—Harry S. Mattice, Jr., District Judge.

Argued: January 27, 2021

Decided and Filed: April 20, 2021

Before: BOGGS, SUTTON, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Erin P. Rust, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellant. Jay Woods, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Erin P. Rust, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellant. Jay Woods, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

NALBANDIAN, Circuit Judge. The government charged Rebecca Stampe and Michael Loden with conspiring to distribute at least 500 grams of methamphetamine. Stampe pled guilty

and agreed to cooperate with the government in its case against Loden.  Loden did not plead guilty.  Before Stampe's sentencing and Loden's trial, however, the government dropped Loden's case after "discover[ing] circumstances apart from evidence of . . . guilt which prevent[ed] . . . moving forward."  (R. 71, PageID 289.)

The government told Stampe that Loden's dismissal did not affect its case against her, even though they were co-conspirators, and the dismissal related to inappropriate conduct by a confidential informant.  Unsatisfied with that answer, Stampe made two motions.  First, she moved the district court to compel the government to disclose the information that led to the dismissal of her co-defendant's conspiracy charge or to review that evidence *in camera*.  Second, she moved to withdraw from her plea agreement, which she says was premised in part on her ability to testify against Loden in exchange for a more lenient sentencing recommendation from the government.

Relying on government representations both that the informant's misconduct happened after Stampe's arrest and that the government had complied with disclosure obligations, the district court denied Stampe's motion for production or review.  It also denied her motion to withdraw from her plea agreement.  We **AFFIRM**.

I.

Relying on a warrant based on confidential-informant information, police searched Stampe's home and found drugs, scales, guns, and cash.  Police arrested her, and she admitted to selling about 15 kilograms of methamphetamine that year.  And she said that Michael Loden had been purchasing distribution quantities of methamphetamine from her for at least two months.  The government used that information, on top of information provided by a confidential informant in the two months after Stampe's arrest, to get a warrant to search Loden's house.

The government charged Stampe with possession with intent to distribute, and it charged Stampe and Loden with conspiring to distribute.  Loden did not plead guilty, but Stampe entered a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) and did.  Under the agreement, Stampe agreed to plead guilty to the conspiracy and have the lesser included offense dismissed.  The agreement contemplated a 168-month sentence.  But it also provided that the government could "bring to the Court's attention the nature, extent, and value of the defendant's

cooperation" in Loden's case to inform the court's determination of "a fair and appropriate sentence." (R. 41, PageID 137.)  Because it was a Rule 11(c)(1)(C) agreement, if the district court accepted the agreement, it was obliged to impose the sentence contemplated by the agreement. In this case, the contemplated sentence included the possibility of a reduction based on Stampe's cooperation in Loden's case but only if the government brought her cooperation to the district court's attention.

Before Stampe's sentencing and shortly before Loden's trial, the United States moved to dismiss all charges against Loden.  The motion stated that "during trial preparation, [the government had] discovered circumstances apart from evidence of [Loden's] guilt which prevent[ed] the United States from moving forward." (R. 71, PageID 289.)

Stampe asked the government for information about the dismissal.  But the government just said the dismissal related to inappropriate conduct of a confidential informant that did not affect Stampe's case.

Stampe then moved to have the court compel production or review the materials *in camera.* Her motion explained that she had positioned herself for a downward departure for cooperating in Loden's case.  And it explained that she failed to see how information could lead to the entire dismissal of Loden's case but have no relevance in his co-defendant's case for the same conspiracy.

The government responded to the motion, claiming that the issues in Loden's case occurred while Stampe was in custody and so did not affect her case.  And it noted that the plea agreement did not specifically require the government to seek a downward variance for cooperation in Loden's now-dismissed case.

At a hearing on the motion, the district court asked, "[i]s it the government's unequivocal representation to the Court that it has complied fully with all *Brady* obligations to Ms. Stampe?" (R. 92, PageID 341.)  It also asked the same question about obligations under *Giglio*, Federal Rule of Criminal Procedure 16, and the Jencks Act.  The government responded yes to these questions. Although the district court stated that it did not "fully understand what the government[]" was saying "when they say, well, it couldn't affect Ms. Stampe because she was in custody," the district court was satisfied with "the government's representation in open court" that the government had

complied with disclosure obligations. (*Id.* at 342, 348.) And because Stampe had provided no reason to doubt the government's representations beyond "pure speculation," the district court denied the motion. (*Id.* at 348.)

Given the court's decision, Stampe moved the court to "not accept her plea agreement" while "allow[ing] her to persist in her guilty plea." (R. 98, PageID 373.) She wanted the court to reject the agreement because, as a Rule 11(c)(1)(C) agreement, it gave the judge no discretion to impose a lesser sentence based on her actual and intended cooperation in the Loden investigation and case. Because the government had said it would not request a downward variance in the wake of Loden's dismissal, Stampe argued she should be relieved from the plea agreement that prevented her from trying to get a lesser sentence based on her actual and intended cooperation in the Loden case. In response, the government construed her motion as a motion "to withdraw" from the plea agreement. (R. 105, PageID 396.) And it argued that the standards that govern guilty plea withdrawal under Federal Rule of Criminal Procedure 11(d)(2)(B) also apply to requests to withdraw from an agreement while persisting in a guilty plea under *United States v. Schuhe*, 688 F. App'x 337 (6th Cir. 2017) (per curiam). Stampe disagreed that Rule 11(d)(2)(B) governed her request because she was not seeking to withdraw the plea itself. The court sided with the government. Applying "basic contract law principles" and relying on the standards under Rule 11(d)(2)(B), the court denied Stampe's motion and accepted the plea agreement. (R. 113, PageID 484.)

## II.

Stampe's principal argument on appeal is that the district court erred when it denied her motion for production or *in camera* review. We review that decision for an abuse of discretion. *See United States v. Hernandez*, 31 F.3d 354, 361 (6th Cir. 1994). Stampe's appeal implicates both constitutional and procedural standards about the showing required to trigger criminal discovery in specific-request cases.

"There is no general constitutional right to discovery in a criminal case . . . ." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). But due process does protect defendants from government "suppression . . . of [material] evidence favorable to" them. *Brady v. Maryland*, 373 U.S. 83, 87

(1963). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). *Brady* creates a freestanding government obligation to disclose material evidence. But it also contemplates that the government might sometimes withhold information either in good or bad faith. And that brings us to specific *Brady* requests for undisclosed materials—something one might call constitutional criminal discovery.

The Supreme Court has explained that a criminal defendant may be able to force disclosure or *in camera* review of some materials if he "establish[es] a basis," "some plausible showing," "for his claim that [something undisclosed] contains material evidence." *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n.15 (1987) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)). This standard does not appear to require "a particularized showing of what information" is sought for the simple reason that before disclosure a defendant likely will not know the content of an undisclosed item—hence the request. *Id.* But the "plausible showing" standard remains a difficult hurdle; without knowing the content of a requested item, the defendant can likely provide little more than informed speculation as to materiality.

The Constitution is not the only option for criminal defendants though. They may also seek discovery under Federal Rule of Criminal Procedure 16. Relevant to Stampe's appeal, Rule 16(a)(1)(E)(i) provides that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph [a document or object] within the government's possession, custody, or control [if] the item is material to preparing the defense." This court has not fully defined the showing needed to trigger discovery under Rule 16(a)(1)(E)(i). But we have held that "a mere conclusory allegation that the requested information is material to the preparation of the defense" falls short. *United States v. Conder*, 423 F.2d 904, 910 (6th Cir. 1970). Other courts have waded deeper into this issue, and they have come to different conclusions about the required showing. *Compare United States v. Ross*, 511 F.2d 757, 762–63 (5th Cir. 1975), *with United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013). Whatever showing is required, it appears to be less onerous than the showing contemplated by *Ritchie* because Rule 16's materiality bar differs from the *Brady* one—some items "material to preparing the defense" may not necessarily be "material either to guilt or to punishment." *See Muniz-Jaquez*, 718 F.3d at 1183

(concluding that Rule 16 is "broader than *Brady*" because "[i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense").

Here, Stampe argued that the dismissal of Loden's identical conspiracy charge raised a red flag, and she requested that the court compel disclosure or review the undisclosed information itself *in camera*. The government's response? Timing and on-the-record statements of compliance. Faced with these arguments, the district court did two things. First, it categorized Stampe's arguments supporting disclosure as "pure speculation." Second, it credited the government's on-the-record representations that the government had fully complied with disclosure obligations because any misconduct happened after Stampe's arrest and thus could not affect her case.

The district court's first decision implicates the constitutional and procedural standards discussed above. It discounted Stampe's arguments as supported by no more than "pure speculation"—a showing certainly below that required by Rule 16 and *Ritchie*. But it is not immediately clear that the district court's characterization was accurate. That Stampe's contention is speculative to a certain extent is, of course and unavoidably, true (if we knew the content, we would be spilling our ink elsewhere). But whether it was *purely* speculative is a closer question. This is not a case in which the defendant fired blindly into the prosecution's papers alleging materiality. Her speculation was at least to a certain degree informed.

We need not dwell on this issue though. Even assuming Stampe said enough to trigger Rule 16 or *Brady* disclosure *in the abstract*, her arguments here ultimately fail because of the court's second move—relying on the government's representations. A defendant's ability to trigger forced disclosure or review under the Constitution or Rule 16 turns on her ability to make some type of showing that items sought might be material (what "materiality" means may depend on the rule at issue). But when the government in response shows that items sought are immaterial, it nips the defendant's request in the bud—disclosure or *in camera* review is unnecessary. And that is the case here.

In *Hernandez*, this court gave the government a powerful tool to avoid criminal discovery requests. 31 F.3d at 361. We held that because a "prosecuting attorney is an officer of the court,"

a district "court is entitled to accept his representations" about whether a specifically requested item is material "absent some indication of misconduct." *Id.* This is especially true in cases like this one in which the government both represents compliance with its disclosure obligations and backs up that assertion in some way. *Cf. id.* (noting that circumstances beyond the government's averments supported deference in relation to materiality). Here, the government's timing explanation made some sense. It is hard to think how misconduct in a related case after a criminal defendant has been arrested *and admitted guilt* might affect the government's case against that defendant—the cat was out of the bag, so Stampe and Loden were not similarly situated. And relying on the candidly limited information she had, Stampe did not help the district court walk through that tricky riddle. Under *Hernandez*, the district court did not abuse its discretion in denying Stampe's motion.[1]

### III.

Alternatively, Stampe argues that the district court erred when it declined to let her withdraw from her plea agreement while persisting in her guilty plea. We review for abuse of discretion. *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006); *Schuhe*, 688 F. App'x at 338.

Under Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant can withdraw her plea if she "can show a fair and just reason for requesting the withdrawal." We look to "a general, non-exclusive list" without a controlling factor in assessing whether a defendant meets this burden:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had

---

[1]That conclusion, however, does not mean that it would have been an abuse of discretion for the court to have reviewed the materials *in camera* before accepting the government's position. The district court suggested that review in this case would have been an "extraordinary step" with "the potential to set a precedent" that would "fundamentally [change] the federal criminal justice system" by requiring judges to review government materials in an overwhelming number of cases. (R. 92, PageID 344, 347.) But this case is unique—dismissals like Loden's "rarely happen[]," and the district court said it didn't "fully understand" the government's contentions that materials related to Stampe's co-conspirator's identical charge "couldn't affect" her "because she was in custody." (*Id.* at 343, 348.) Thus, we are skeptical that *in camera* review under these unique circumstances would have forced district courts "into the government's files in any case where . . . a defendant wants" review. (*Id.* at 348.)

prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Ellis*, 470 F.3d at 281 (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)). And we often refer to these factors as the *Bashara* factors. Furthermore, while Rule 11 and some of these factors seem better suited for their intended inquiry than the inquiry here, we have applied these factors (albeit in an unpublished decision) when a defendant still desires to plead guilty and asks a court to "set aside [a] plea agreement." *See Schuhe*, 688 F. App'x at 338.

Before the district court, Stampe argued that Rule 11(d)(2)(B) and our Circuit's standards for analyzing requests under that rule should not apply to her request at all. That rule, by its plain terms, only applies to requests to "withdraw a *plea* of guilty." Fed. R. Crim. P. 11(d)(2)(B) (emphasis added). And she had merely asked the court to reject her plea agreement, *not* her plea. There may be something to this argument. It does not appear that any of our published cases have defined the governing standard in this unique circumstance. And the text of the rule supports Stampe's reading. On a related note, it may also be the case that there is a meaningful difference between a request to withdraw from an agreement and a request for the court to reject an agreement under Rule 11(c)(1)(C) even though both moves would be functionally identical in cases like this one.**[2]**

But Stampe did not provide the district court with any meaningful alternative to the *Bashara* factors and Rule 11(d)(2)(B). And she does not press this argument on appeal. True, she briefly suggests that the *Bashara* factors that apply to Rule 11(d)(2)(B) requests "appear not even relevant under [the] circumstances" here. (Appellant Br. at 31.) And she does point out that *Schuhe* is unpublished and thus does not bind us. But she does not explain what alternative standard should apply. And she does not argue that the district court erred in turning to the factors. Rather, she focuses her attention on arguing that the district court should have let her withdraw from her plea agreement under the *Bashara* factors.

---

**[2]**The Rule 11(c)(1)(C) nature of this agreement prevented the trial court from letting the agreement stand and then taking into account the possibility of any unfairness to Stampe resulting from the Loden situation in sentencing. Of course, if the court had rejected the agreement or let Stampe withdraw from it, both sides would have reverted to square one for sentencing, creating the possibility of both additional risk and reward for Stampe.

Her *Bashara* argument boils down to one central claim: Loden's dismissal was a sea change that undermined a central purpose of her agreement—the possibility that she might get a reduction if she cooperated in Loden's case. Without that possibility, she would not have agreed to the terms of the deal.

The problem with Stampe's argument is that it oversells the importance of that possibility based on the plea agreement itself. While we do not doubt that Stampe sincerely believed that she might avoid some prison time because of her putative cooperation in Loden's case, the plea agreement contemplated *but did not require* that possibility. So contrary to her assertion on appeal, it was not the "principal purpose" of the agreement. (Appellant Br. at 34.) The main purpose was the exchange of her plea for the government dropping the other charge against her and agreeing to a 168-month sentence: "In consideration of the defendant's guilty plea, the United States agrees to move the Court at the time of sentencing to dismiss the remaining count against the defendant in the Superseding Indictment." (R. 40, PageID 126.) The possibility of another reduction was a sweetener, not the main purpose. Consequently, the district court did not abuse its discretion, especially because several factors that we have suggested apply in this context support its decision: the large gap of time separating her plea and her motion to withdraw; her undisputed guilt; her extensive background with the criminal justice system; and that she was not rushed into the agreement. The court did not abuse its discretion.

IV.

Our decision leaves stones unturned—an unsatisfying result for Stampe who will be left puzzling about why the government so adamantly opposed her request if the undisclosed information was in fact immaterial to her case. This result highlights why it may be good prosecutorial policy to provide access to even immaterial evidence in some cases to promote perceptions of fairness. But we are not in the business of policing prosecutorial policy. And the government may have had legitimate reasons for its decision beyond its materiality determination. Because the district court was entitled to rely on the government's representations and acted within its discretion in holding Stampe to her plea agreement, we **AFFIRM**.