NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0309n.06

No. 20-5175

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERCIA, )
)
    **Plaintiff-Appellee,** )
)
v. )
)
JORGE VARGAS RUIZ, )
)
    **Defendant-Appellant.** )
)

**FILED**
July 1, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

**UNSEALED OPINION**[*]

**Before: MOORE, COLE, and GILMAN, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Jorge Vargas Ruiz pleaded guilty to one count of conspiracy to possess with intent to distribute methamphetamine. He argues on appeal that his guilty plea is invalid because it was not knowing, intelligent, and voluntary. Because we conclude that Vargas Ruiz did not enter into the plea agreement—including an enforceable appellate waiver—knowingly, intelligently, and voluntarily, we vacate his conviction and sentence and remand the case for further proceedings.

### I. BACKGROUND

A grand jury indicted Vargas Ruiz on one count of conspiracy to possess with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). R. 14 (Indictment at 1) (Page ID #24). If convicted, Vargas Ruiz faced the potential

---

[*]On July 1, 2021, the court filed this opinion under seal, and granted counsel ten (10) days to move for redaction of sensitive information, if any, contained in the opinion. On July 12, 2021, the court, having received no motion for redactions, unsealed the opinion. The date the opinion is deemed to have been filed remains July 1, 2021.

of a maximum sentence of life imprisonment and a minimum sentence of ten years. *Id.* at 3 (Page ID #26). At first, Vargas Ruiz pleaded not guilty at his arraignment on August 21, 2018, and both parties began preparing for trial while also engaging in plea negotiations. Vargas Ruiz exhibited concerns regarding his case and his counsel and sent a letter to the district court expressing his worry about the lack of communication with his counsel as well as his confusion about the charges he faced. R. 29 (Sept. 13, 2018 Letter) (Page ID #68). Upon receiving the letter, the district court scheduled an ex parte hearing to determine the status of counsel. But the day before the hearing, Vargas Ruiz filed an ex parte motion stating that "he no longer had any concerns regarding representation" and wished to continue with his appointed counsel. R. 37 (Sealed Ex Parte Mot. at 1) (Page ID #77).

On June 11, 2019, Vargas Ruiz changed his plea of not guilty and accepted a plea agreement. Pursuant to Federal Rule of Criminal Procedure Rule 11(c)(1)(C), the written plea agreement specified that, in exchange for Vargas Ruiz's plea of guilty, the government would agree to ask the court for (1) a sentence of no longer than 168 months' imprisonment, (2) a monetary fine at the lowest end of the applicable Guidelines range, and (3) a three-level reduction for acceptance of responsibility. R. 54 (Plea Agreement at 4) (Page ID #107); *see* FED. R. CRIM. P. 11(c)(1)(C) (authorizing the government to "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply"; noting that "such a recommendation or request binds the court once the court accepts the plea agreement"). In a sealed supplement to the plea, the government, "[i]n addition," agreed to

> consider making a motion pursuant to §5Kl.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), stating the extent to which the defendant has provided substantial

assistance in the investigation or prosecution of another person who has committed an offense. Whether or not to make such motion shall be in the sole discretion of the United States Attorney.

R. 56 (Sealed Plea Supplement at 1) (Page ID #115). Vargas Ruiz agreed to waive his right to appeal his conviction unless such an appeal was based on claims of ineffective assistance of counsel or prosecutorial misconduct. R. 54 (Plea Agreement at 4) (Page ID #107).

During the change-of-plea hearing, the district court conducted the required plea colloquy under Rule 11. The district court reviewed with Vargas Ruiz the nature of the charges against him, the terms of the plea agreement, its consequences, and the various constitutional rights that Vargas Ruiz would be waiving by accepting the agreement. Vargas Ruiz confirmed that he understood these issues, that he agreed with all the terms of the plea agreement, that no one forced him to enter the plea, and that he was satisfied with the advice of his counsel. R. 148 (Plea Hr'g Tr. at 8–12, 14–18) (Page ID #407–11, 413–17). Counsel corroborated these assertions and verified that counsel had "gone over [the role of the Guidelines] many times and in great detail" with Vargas Ruiz and that Vargas Ruiz had "shown a great deal of insight and knowledge of the law and also the facts of this case." *Id.* at 7, 19 (Page ID #406, 418). Counsel further confirmed that Vargas Ruiz had "been able to communicate with [counsel] effectively and contribute to the defense strategy of this matter." *Id.* at 7 (Page ID #406).

The district court also reviewed the supplement to the plea with Vargas Ruiz. Vargas Ruiz and his counsel acknowledged that the government retained full discretion over whether to make a motion for a downward departure to the extent that Vargas Ruiz provided substantial assistance. R. 149 (Sealed Plea Hr'g Tr. at 2–3) (Page ID #425–26). The district court also clarified with the parties the relationship between the plea supplement and the plea agreement:

> THE COURT: Did I understand you correctly that the (C) plea, which has an agreed upon sentence of 168 months --
>
> DEFENSE COUNSEL: No more than 168 months. We intend to ask for a variance.
>
> THE COURT: I see. But with respect to its relationship to this plea supplement, I believe I understood you to say that this would be on top of that; in other words, you would consider making a 5K in order to go below the agreed upon ceiling.
>
> DEFENSE COUNSEL: Yes, sir.
>
> AUSA: Yes, sir, that's correct. We have agreed to consider that.
>
> . . .
>
> THE COURT: Mr. Vargas, do you have any questions about this discussion we have just had here?
>
> THE DEFENDANT: No, sir.

*Id.* at 3 (Page ID #426). After these discussions, the district court found Vargas Ruiz competent to enter a plea, determined that the plea was knowing and voluntary, and accepted the guilty plea. R. 55 (Order at 1) (Page ID #110). The district court, however, deferred its decision regarding the sentence recommended in the plea agreement until it considered the Presentence Investigation Report ("PSR"). *See* FED. R. CRIM. P. 11(c)(3)(A) (authorizing a district court to defer accepting or rejecting a Rule 11(c)(1)(C) plea agreement until the court has reviewed the PSR).

Before the sentencing hearing took place, a breakdown occurred between Vargas Ruiz and his counsel. On September 16, 2019, defense counsel filed a motion for an ex parte hearing to determine the status of counsel due to Vargas Ruiz's allegations that counsel had provided ineffective assistance. R. 78 (Mot. for Ex Parte Hr'g at 1) (Page ID #190). According to counsel, the basis for Vargas Ruiz's allegations was his belief that counsel's negotiations with the government failed to obtain the sentence that Vargas Ruiz believed would result from the entry of

his guilty plea. Counsel stated that "it would be an improper conflict of interest" for counsel to advise Vargas Ruiz as to whether he should file a motion to withdraw his plea. *Id*. at 2 (Page ID #191). Vargas Ruiz also sent a letter to the district court on October 3, 2019. He complained that communication between himself and counsel was not adequate, that either his counsel or the prosecutor had misled him regarding the amount of a downward departure that he would receive, and that he wanted a different lawyer. R. 93 (Oct. 3, 2019 Letter at 1) (Page ID #209). Both counsel and Vargas Ruiz reiterated these same concerns during the ex parte hearing. R. 146 (Sealed Ex Parte Hr'g Tr. at 2, 4–7, 9) (Page ID #385, 387–90, 392). Although the district court did not address whether Vargas Ruiz's counsel provided misleading advice, the court did find that the breakdown in communication was substantial enough to necessitate that new counsel be appointed. *Id*. at 11 (Page ID #394). The district court also postponed sentencing so that the newly appointed counsel could prepare.

On November 7, 2019, the district court sentenced Vargas Ruiz to 168 months of imprisonment and five years of supervised release, in accordance with the maximum sentence allowed under the plea agreement. R. 115 (Sentencing Hr'g Tr. at 11–12) (Page ID #286–87); R. 54 (Plea Agreement at 4) (Page ID #107). The court started by adopting the PSR, which found that Vargas Ruiz's conduct resulted in a Guidelines range of 210 to 262 months' imprisonment. R. 115 (Sentencing Hr'g Tr. at 4) (Page ID #279). The government requested, under U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 5K1.1, a downward departure of two offense levels based on Vargas Ruiz's substantial assistance, which would result in a new Guidelines range of 168 to 210 months' imprisonment. R. 116 (Sealed Sentencing Hr'g Tr. at 2) (Page ID #293). The government then requested that the district court accept the plea agreement and sentence Vargas

Ruiz to 168 months' imprisonment. *Id.* In response, Vargas Ruiz's new counsel began by explaining that it was Vargas Ruiz's understanding "that his cooperation may yield as much as a five-level downward [departure]." *Id.* at 3 (Page ID #294). Defense counsel, however, did not believe that the parties ever reached an agreement concerning the amount of a departure. Nonetheless, defense counsel argued that in order for Vargas Ruiz's plea supplement to have any "real benefit" or meaning, any departure must go below the 168-month ceiling set out in the plea agreement. *Id*. at 4–5 (Page ID #295–96). Defense counsel also argued that the amount of cooperation Vargas Ruiz provided entitled him to a sentence of 120 months' imprisonment, *i.e.*, the mandatory minimum for his offense. Furthermore, defense counsel stated that Vargas Ruiz did not want to withdraw his guilty plea at that time. *Id.* at 4 (Page ID #295). The district court rejected Vargas Ruiz's argument, accepted the government's recommendation of a 168-month sentence, and noted that it would not have accepted a Rule 11(c)(1)(C) plea agreement providing for a 120-month sentence. *Id.* at 5–6 (Page ID #296–97).

Vargas Ruiz timely filed this appeal. He sent another letter to the district court detailing his concerns about his sentence and his counsel. Vargas Ruiz asserted that his first counsel told him that if he pleaded guilty, he would receive the 120-month mandatory minimum sentence. R. 127 (Jan. 9, 2020 Letter) (Page ID #329). He also stated that he told his second counsel that he wanted to withdraw his guilty plea if he did not receive a 120-month sentence. *Id.* Because his counsel did not do what he asked, Vargas Ruiz requested that the court appoint him new counsel. The district court denied Vargas Ruiz's request as moot after this court appointed different counsel to represent Vargas Ruiz for his appeal. R. 152 (Order) (Page ID #433).

## II.  ANALYSIS

### A.  Jurisdiction and Standard of Review

Because Vargas Ruiz's plea agreement contained an appeal waiver, we must determine whether his waiver forecloses our consideration of his appeal.  The plea agreement's appellate waiver bars Vargas Ruiz from appealing his conviction and sentence unless his appeal is based on a claim of ineffective assistance of counsel or prosecutorial misconduct.  R. 54 (Plea Agreement at 4) (Page ID #107).  Vargas Ruiz does not appeal his sentence or conviction on either of those grounds, so it would appear that his appellate waiver deprives us of jurisdiction.  Generally, "[w]e will enforce an appeal waiver included in a plea agreement when the agreement is made knowingly and voluntarily."  *United States v. Morrison*, 852 F.3d 488, 490 (6th Cir. 2017).  Here Vargas Ruiz's argument for why his appeal is not barred by his waiver of appeal rights mirrors his argument for why his conviction should be vacated:  Vargas Ruiz claims that he did not knowingly enter into the plea agreement.  "Because the enforceability of the appellate waiver stands or falls with the validity of the agreement, we must consider whether the plea agreement as a whole was knowing and voluntary in order to determine whether [Vargas Ruiz's] appeal is barred by his waiver."  *United States v. Ataya*, 884 F.3d 318, 322 (6th Cir. 2018) (internal citation omitted).

"We review de novo whether a defendant's plea was entered knowingly, voluntarily, and intelligently," but we review the factual bases relied upon by the district court for clear error.  *United States v. Catchings*, 708 F.3d 710, 716 (6th Cir. 2013).  The government argues that Vargas Ruiz's claim should be subject to plain-error review, citing our opinion in *United States v. Hobbs*, 953 F.3d 853, 857 (6th Cir. 2020).  But *Hobbs* applied a plain-error standard based on a Supreme Court case instructing courts to apply plain-error review where "the violation claimed was of Rule

11, not of due process," and the defendant "is dilatory in raising Rule 11 error." *United States v. Dominguez Benitez*, 542 U.S. 74, 80, 83 (2004). Thus, *Hobbs* is inapposite, and our prior precedent dictates that claims premised on a constitutional right to due process, and not Rule 11 error, receive de novo review, regardless of whether the defendant objected. *See Catchings*, 708 F.3d at 716 (noting that a defendant's claim that his plea was not entered knowingly and voluntarily is subject to de novo review, but a claim that the district court failed to comply with Fed. R. Crim. P. 11 is reviewed for plain error).

**B. Knowing and Voluntary Agreement**

On appeal, Vargas Ruiz contends that his plea was not knowing because he was led to believe that his acceptance of the plea agreement would result in a sentence of 120 months' imprisonment. Appellant Br. at 19. This contention appears to be based on Vargas Ruiz's understanding that his cooperation would lead to a five-level downward departure. *Id.* at 18. After a careful review of the record, we conclude that, although erroneous, Vargas Ruiz's expectation of a sentence of 120 months' imprisonment stems from a reasonable misunderstanding of his plea agreement predicated on statements from both the government and the district court.

For a guilty plea to be knowing, voluntary, and intelligently made, the defendant must be "fully aware of the direct consequences [of pleading guilty], including the actual value of any commitments made to him by the court, prosecutor, or his own counsel." *Brady v. United States*, 397 U.S. 742, 755 (1970) (quoting *Shelton v. United States*, 242 F.2d 101, 115 (5th Cir. 1957) (Tuttle, J., dissenting)). In cases where a defendant claims that he misunderstood the consequences of his plea, courts must evaluate the record to determine if the "circumstances as they existed at the time of the guilty plea, *judged by objective standards*, reasonably justified his mistaken

impression." *United States v. Crusco*, 536 F.2d 21, 24–25 (3d Cir. 1976) (emphasis added) (quoting *Mosher v. Lavallee*, 491 F.2d 1346, 1348 (2d Cir. 1974)) (finding that an "analysis of the interaction between the district judge and [the defendant] prior to sentencing reveal[ed] that [the defendant] was not unambiguously informed" of the consequences of his guilty plea); *see also Brady*, 397 U.S. at 749 ("The voluntariness of [a] plea can be determined only by considering all of the relevant circumstances surrounding it."). Here "there is sufficient objective proof on the record in statements by the government and the district judge to support [Vargas Ruiz]'s claim that he misunderstood" the value of the government's commitment to consider filing a § 5K1.1 motion based on his cooperation. *Crusco*, 536 F.2d at 24–25.

Pursuant to Rule 11, the district court properly examined Vargas Ruiz as to his competence to plead, his understanding of the consequences of his actions in pleading guilty, and his understanding of the terms of the plea agreement and plea supplement. During the plea colloquy, the court went over the plea supplement, particularly the provision in which the government agreed to consider making a § 5K1.1 motion to request a downward departure if Vargas Ruiz provided substantial assistance. The district court asked for clarification regarding the relationship between the purpose of the potential motion and the government's promise in the plea agreement to recommend a sentence of no higher than 168 months' imprisonment. R. 149 (Sealed Plea Hr'g Tr. at 3) (Page ID #426). The district court understood the interplay between the plea agreement's recommended sentence and the plea supplement's conditional promise to request a downward departure to mean that any § 5K1.1 motion would be used "to go below the agreed upon [168-month] ceiling." *Id.*; *see also* R. 56 (Sealed Plea Supplement at 1) (Page ID #115) (stating that the government's conditional promise was "[i]n addition to" the government's promise in the plea

agreement to recommend a sentence of no higher than 168 months' imprisonment). Vargas Ruiz, his counsel, and the government agreed to that interpretation. R. 149 (Sealed Plea Hr'g Tr. at 3) (Page ID #426).

Based on these statements, Vargas Ruiz reasonably could have construed the value of the government's commitment to consider filing a § 5K1.1 motion to be that any such motion, although filed at the government's discretion, would result in a lowering of Vargas Ruiz's sentencing range below 168 months of imprisonment. The timing of the statements supports this conclusion. The district court's clarification came directly after the government's statement that it retained discretion in requesting a departure and how much of a departure it might request. *Id.* at 2–3. A reasonable person could certainly understand the district court's immediate follow up as clarifying exactly how much discretion the government could exercise. Despite the plain text of the agreements and the government's statements, the district court's statements created ambiguity in the nature of the government's conditional promise. *See United States v. Melvin*, 557 F. App'x 390, 394–95 (6th Cir. 2013) (quoting *United States v. Saferstein*, 673 F.3d 237, 243 (3d Cir. 2012)) (recognizing that a district court's statements "during the colloquy can create ambiguity where none exists in the plain text of the agreement").

Prior to sentencing, Vargas Ruiz repeatedly asserted his understanding that his cooperation would result in a downward departure below 168 months, see R. 78 (Mot. for Ex Parte Hr'g at 1) (Page ID #190); R. 93 (Oct. 3, 2019 Letter at 1) (Page ID #209); R. 146 (Sealed Ex Parte Hr'g Tr. at 5–7) (Page ID #387–90). Furthermore, Vargas Ruiz's counsel consistently argued that the government's two-level downward departure request "means nothing unless . . . counted from 168 downward." R. 116 (Sealed Sentencing Hr'g Tr. at 5) (Page ID #296); *see also* R. 103 (Sealed

Def.'s Sentencing Mem. at 1–2) (Page ID #233–34). We note that, based on Vargas Ruiz's total offense level and criminal history category, a downward departure of at least five levels would have ensured that Vargas Ruiz's Guidelines range would be below 168 months of imprisonment.[1] Accordingly, the record reflects that Vargas Ruiz's subjective expectations match an objectively reasonable construction of the district court's and the government's statements.

The dissent contends that Vargas Ruiz's assertions are inconsistent with the text of the Guidelines. We agree that a § 5K1.1 motion usually does not depart from a specific sentence but instead allows a court to depart from a defendant's calculated Guidelines range. But as discussed above, Vargas Ruiz's assertion that he believed he would receive as much as a five-level downward departure for his cooperation is in fact consistent with an understanding that any downward departure would enable the district court "to go below the agreed upon [168-month] ceiling." R. 149 (Sealed Plea Hr'g Tr. at 3) (Page ID #426). Moreover, Vargas Ruiz's statement that the government's two-level downward departure should start from 168 months must be placed in the proper context. Vargas Ruiz argued that a two-level downward departure from his total offense level would not lower his Guidelines range below 168 months, which would in essence render any benefit from his negotiated plea supplement and cooperation meaningless. R. 103 (Sealed Def.'s Sentencing Mem. at 1–2) (Page ID #233–34). It certainly would not have ensured that the low-end of Vargas Ruiz's Guidelines range, at the very least, would fall below 168 months'

---

[1]Vargas Ruiz had a total offense level of 35 and a criminal history category of III, which resulted in a Guidelines range of 210-262 months of imprisonment. R. 115 (Sentencing Hr'g Tr. at 3–4) (Page ID #278–79). A downward departure of three levels would have placed Vargas Ruiz's Guidelines range between 151-188 months of imprisonment and a departure of at least five levels would have resulted in a Guidelines range of 121-151 months, completely below 168 months of imprisonment. *See* U.S.S.G. Sentencing Table (2018).

imprisonment. [2] Thus, he argued that, if the district court were to accept just a two-level downward departure, the only way that would be consistent with the plea supplement is if the court started with a Guidelines range that most closely corresponded to a high-end of 168 months and then dropped two levels from that Guidelines range. R. 116 (Sealed Sentencing Hr'g Tr. at 5) (Page ID #296). In sum, all of Vargas Ruiz's assertions and arguments track a reasonable construction of the district court's statements, are consistent with the Guidelines, and attempt to fit the government's actions within both frameworks.

Although the government's promise to move for a § 5K1.1 departure was at its discretion, the conditional nature of that promise does not affect our conclusion. In the context of the plea agreements containing conditional promises by the government to move for a downward departure, we have held that "[u]nfulfilled subjective expectations of counsel and a defendant regarding the possible length of sentence do not render an otherwise valid plea involuntary." *United States v. Ford*, 15 F. App'x 303, 308 (6th Cir. 2001); *see also United States v. Stampe*, 994 F.3d 767, 774 (6th Cir. 2021). Unlike the cited cases, here the government did in fact exercise its discretion and request a downward departure. But because the government's request was for a downward departure of only two levels, it did not lower Vargas Ruiz's Guidelines range below 168 months. The government's request did not fulfill Vargas Ruiz's subjective expectation that we have determined was also objectively reasonable based on the district court's statements at the plea colloquy. Thus, we conclude that the district court's mischaracterization of the value of the government's commitment was substantial enough that Vargas Ruiz entered his plea involuntarily

---

[2]A downward departure of two levels would have placed Vargas Ruiz's Guideline range between 168-210 months of imprisonment.

and without full knowledge. Consequently, Vargas Ruiz's plea agreement and his appellate waiver are invalid, and he is entitled to withdraw his guilty plea.

### III.  CONCLUSION

For the reasons stated above, we **VACATE** the district court's judgment and sentence and **REMAND** the case for further proceedings.

COLE, Circuit Judge, dissenting. I respectfully disagree with the majority's conclusion that Vargas Ruiz did not knowingly enter his guilty plea. A guilty plea is knowing and voluntary when the defendant is informed of its likely consequences. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). "[D]ue process of law necessitates that [the defendant's] reasonable expectation of benefit from the plea agreement be respected." *United States v. Randolph*, 230 F.3d 243, 245 (6th Cir. 2000). Thus, while a defendant's subjective expectations are insufficient to invalidate a plea, *see Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986), a plea is not knowing, voluntary, and intelligently made if the defendant reasonably relies on a misrepresentation of its consequences.

Here, the record does not show that Vargas Ruiz reasonably misunderstood the consequences of his guilty plea. Vargas Ruiz entered into a written plea agreement where the government agreed to request a (1) sentence of not more than 168 months' imprisonment, (2) fine at the lowest of end of the applicable Guidelines range, and (3) three-level sentence reduction for acceptance of responsibility. Additionally, Vargas Ruiz entered into a plea supplement where the government agreed to

> *consider* making a motion pursuant to §5Kl .1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), stating the extent to which the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense. *Whether or not to make such motion shall be in the sole discretion of the United States Attorney*.

(Sealed Plea Suppl., R. 56, PageID 115 (emphasis added).)

At Vargas Ruiz's change-of-plea hearing, the district court judge reviewed the terms of the plea agreement and obtained assurances from Vargas Ruiz that he understood and agreed with all of the terms of the agreement. The judge then discussed the plea supplement with counsel and the

defendant in sealed proceedings. Vargas Ruiz confirmed that he had signed the plea supplement. The government confirmed that, in exchange for Vargas Ruiz's agreement to cooperate, it had agreed "to consider a motion for downward departure, in addition to what is stated in the plea agreement, pursuant to Rule 5K1.1[.]" (Sealed Change-of-plea Hr'g Tr., R. 149, PageID 425.) The government added that Vargas Ruiz had "already provided some assistance," but it was "retain[ing] discretion not only whether to make the motion, but if [it did], how . . . deep of a downward departure to ask the Court for." (*Id.* at PageID 425–26.) The judge then asked the parties about the relationship between the plea agreement and the plea supplement, noting "with respect to [the 168-month sentence cap's] relationship to this plea supplement, I believe I understood you to say that [the 5K motion] would be on top of that; in other words, you would consider making a 5K in order to go below the agreed upon ceiling." (*Id.* at PageID 426.) Vargas Ruiz's counsel answered in the affirmative, the government stated "that's correct" and that it "had agreed to consider that," and Vargas Ruiz confirmed he had no questions about the discussion that had taken place concerning the plea supplement. (*Id.*)

Vargas Ruiz contends that, based on this discussion, he reasonably believed that he would receive a five-level downward departure, bringing his sentence to the mandatory-minimum of 120-months. When considered in isolation, the brief exchange between the court and the parties as to the relationship between the plea agreement and the plea supplement may have been ambiguous. But, when considered in context and in relation to the terms of the plea supplement, the exchange does not reasonably support the inference that Vargas Ruiz was promised a five-level downward departure.

As a preliminary matter, Vargas Ruiz's contention that any departure recommended by a § 5K1.1 motion must start at the 168-month sentencing cap is inconsistent with the text of the Guidelines, which provide that upon the government's motion, "the court may depart from *the guidelines*," not from a particular sentence. USSG § 5K1.1 (emphasis added). Moreover, the plain terms of the plea supplement and the government's statements at the change-of-plea indicate that the government maintained sole discretion over whether to file a § 5K1.1 motion and over the degree of any departure. As the district court clarified during the hearing, "[the government] would *consider* making a 5K in order to go below the agreed upon ceiling." (Sealed Change-of-plea Hr'g Tr., R. 149, PageID 426 (emphasis added).) The district court never stated that the *only* § 5K1.1 motion the government could file is one going below the ceiling of 168 months. Rather, the government was expressly permitted to assign any value to Vargas Ruiz's assistance at its discretion—here, it deemed his assistance worthy of a two-level departure. In light of the government's explicit discretion, it was not reasonable for Vargas Ruiz to believe that he was guaranteed a five-level downward departure.

Therefore, I would conclude that Vargas Ruiz's plea was knowing, voluntary, and intelligently made. For that reason, I would dismiss the appeal in light of the plea agreement's appellate waiver.